STATE OF NORTH CAROLINA v. NORMAN WAYNE JONES

No. 591PA03

(Filed 25 June 2004)

**1. Drugs—possession of cocaine–felony–habitual felon support**

Possession of cocaine is a felony under N.C.G.S. § 90-95(d)(2) and can therefore serve as an underlying felony to an habitual felon indictment because the language of N.C.G.S. § 90-95(d)(2), the statute's legislative history, the terminology used in other statutes, and the General Assembly's acquiescence in the longstanding practice in our criminal justice system of classifying possession of cocaine as a felony all indicate the intent of the General Assembly to classify possession of cocaine as a felony offense.

**2. Appeal and Error–Court of Appeals–panel bound by prior decision**

A panel of the Court of Appeals erred by concluding that possession of cocaine is a misdemeanor when a prior decision of that court held that possession of cocaine is a felony because the panel is bound by the prior decision until it is overturned by a higher court.

STATE v. JONES

[358 N.C. 473 (2004)]

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 161 N.C. App. 60, 588 S.E.2d 5 (2003), vacating and remanding a judgment entered 24 May 2002 by Judge William Z. Wood, Jr. in Superior Court, Forsyth County. Heard in the Supreme Court 18 February 2004.

*Roy Cooper, Attorney General, by Daniel P. O'Brien, Assistant Attorney General, and William P. Hart, Special Deputy Attorney General, for the State.*

*Staples Hughes, Appellate Defender, by Constance E. Widenhouse, Assistant Appellate Defender, for defendant-appellee.*

*Marshall Hurley, PLLC, by Marshall Hurley, for Families Against Mandatory Minimums; and Charles E. Daye and Paul M. Green, for the North Carolina Academy of Trial Lawyers, amici curiae.*

BRADY, Justice.

The sole issue presented for review is whether the North Carolina General Assembly classifies the offense of possession of cocaine as a misdemeanor or a felony under N.C.G.S. § 90-95(d)(2). For the reasons stated in this opinion, we conclude that possession of cocaine is a felony and therefore reverse the decision of the Court of Appeals holding otherwise.

The underlying facts are as follows: Defendant Norman Wayne Jones[1] was indicted on 26 November 2001 for possession with intent to sell and deliver cocaine and for being an habitual felon. Defendant's habitual felon indictment was supported by three underlying felonies, one of which was a 12 November 1991 conviction for possession of cocaine.[2] On 24 May 2002, defendant pled guilty to possession with intent to sell and deliver cocaine and to attaining habitual felon status. Based upon defendant's stipulation to a prior record

1. We note that the indictments refer to defendant as "Norman Wayne Jones aka Norman Waynetta Jones aka Norman Dewayne Jones aka Norman Wayneth Jones." The Judgment and Commitment Order refers to defendant as "Jones, Norman." He is referred to by all of these names throughout the record on appeal. To remain consistent, we refer to him as Norman Wayne Jones.

2. Defendant's habitual felon indictment was also supported by a 1993 conviction for possession with intent to sell and deliver a counterfeit controlled substance and a 1995 conviction for possession with intent to sell and deliver cocaine. Although both of these convictions are controlled substance violations, they are not at issue in this case.

STATE v. JONES

[358 N.C. 473 (2004)]

level of IV for felony sentencing purposes, defendant received a minimum sentence of 107 months to a maximum sentence of 138 months' imprisonment.[3] Pursuant to his plea agreement, defendant preserved a right to appeal the trial court's denial of his motion to suppress, motion for writ of habeas corpus, and motion to dismiss his habitual felon indictment.

Defendant appealed to the North Carolina Court of Appeals. Defendant contended that his habitual felon indictment was insufficient because one of the convictions supporting the indictment, the 1991 conviction for possession of cocaine, was classified as a misdemeanor under N.C.G.S. § 90-95(d)(2). A panel of the Court of Appeals unanimously agreed based upon its conclusion that in 1991 N.C.G.S. § 90-95(d)(2) "plainly" classified possession of cocaine as a misdemeanor. *State v. Jones*, 161 N.C. App. 60, 67, 588 S.E.2d 5, 11 (2003). Accordingly, the court held that because defendant's habitual felon indictment was improperly supported by a misdemeanor conviction, the indictment was invalid and did not convey jurisdiction on the trial court. *Id.* As a result, the Court of Appeals vacated defendant's guilty plea to attaining habitual felon status.[4] *Id.* The case is now before this Court pursuant to the State's petition for discretionary review of the portion of the decision of the Court of Appeals which held that possession of cocaine is a misdemeanor.

Under N.C.G.S. § 14-7.1,

Any person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof is declared to be an habitual felon. For the purpose of this Article, a felony offense is defined as an offense which is a felony under the laws of the State or other sovereign wherein a plea of guilty was entered or a conviction was returned regardless of the sentence actually imposed.

---

3. Although the trial court orally announced defendant's sentence in open court, it appears that defendant's sentencing term was inadvertently omitted from the Judgment and Commitment Order. Because the Court of Appeals vacated defendant's judgment for reasons unrelated to the issue discussed in this case, defendant's judgment remains vacated regardless of our decision here. We therefore find it unnecessary to direct the trial court to correct this and other errors in the Judgment and Commitment Order.

4. The Court of Appeals also vacated defendant's guilty plea to possession with intent to sell and deliver cocaine based upon its determination that defendant's plea agreement was invalid for reasons unrelated to the issue before this Court. *Jones*, 161 N.C. App. at 67, 588 S.E.2d at 11.

N.C.G.S. § 14-7.1 (2003). To determine whether defendant's 1991 conviction for possession of cocaine properly served as an underlying felony for his habitual felon indictment, we must decide whether the offense of possession of cocaine is a felony or a misdemeanor.

[1] We conclude that possession of cocaine is a felony and therefore can serve as an underlying felony to an habitual felon indictment. The language of N.C.G.S. § 90-95(d)(2), the statute's legislative history, and the terminology used in other criminal statutes all indicate the General Assembly's intent to classify possession of cocaine as a felony offense. Moreover, for nearly twenty-five years, our criminal justice system has treated possession of cocaine as a felony pursuant to N.C.G.S. § 90-95(d)(2). If the General Assembly had not intended such an interpretation of section 90-95(d)(2) to continue, it could have amended the statute to end this long-standing practice. Because it did not, and in light of other factors discussed below, we conclude that possession of cocaine is a felony.

I.

The North Carolina Controlled Substances Act categorizes cocaine as a Schedule II controlled substance. N.C.G.S. § 90-90(1)d. (2003); *accord* N.C.G.S. § 90-90(a)4. (1990) (renumbered as N.C.G.S. § 90-90(1)d. (1999)) (providing, at the time of defendant's 1991 conviction for possession of cocaine, that cocaine was a Schedule II controlled substance). Under N.C.G.S. § 90-95(a)(3), it is generally unlawful to possess a controlled substance. N.C.G.S. § 90-95(a)(3) (2003).

[A]ny person who violates G.S. 90-95(a)(3) with respect to:

. . : .

(2) *A controlled substance classified in Schedule II, III, or IV shall be guilty of a Class 1 misdemeanor.* If the controlled substance exceeds four tablets, capsules, or other dosage units or equivalent quantity of hydromorphone or if the quantity of the controlled substance, or combination of the controlled substances, exceeds one hundred tablets, capsules or other dosage units, or equivalent quantity, the violation shall be punishable as a Class I felony. *If the controlled substance is* methamphetamine, amphetamine, phencyclidine, or *cocaine* and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or coca leaves and any salt, isomer, salts of isomers, compound, derivative, or prepa-

ration of coca leaves, or any salt, isomer, salts of isomers, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances (except decocanized coca leaves or any extraction of coca leaves which does not contain cocaine or ecgonine), *the violation shall be punishable as a Class I felony.*

N.C.G.S. § 90-95(d)(2) (2003) (emphasis added).[5]

Defendant contends that under the plain language of section 90-95(d)(2), the offense of possession of cocaine is a misdemeanor. Defendant explains that this result is dictated by N.C.G.S. § 90-90(1)d., which classifies cocaine as a Schedule II controlled substance, and the first sentence of section 90-95(d)(2), which states that a person in possession of a "Schedule II, III, or IV" controlled substance is "guilty of a Class 1 misdemeanor." N.C.G.S. § 90-95(d)(2). According to defendant, the statute's third sentence, providing that a conviction for possession of cocaine is "punishable as a Class I felony," *id.*, does not serve to classify possession of cocaine as a felony for determining habitual felon status. Rather, that phrase simply denotes the proper punishment or sentence for a conviction for possession of cocaine. Defendant argues that because a conviction for possession of cocaine is not classified as a felony, it cannot serve as a predicate offense for an habitual felon indictment. We disagree with defendant's interpretation of section 90-95(d)(2).

When interpreting statutes, our principal goal is "to effectuate the purpose of the legislature." *Liberty Mut. Ins. Co. v. Pennington,* 356 N.C. 571, 574, 573 S.E.2d 118, 121 (2002). "When the language of a statute is clear and unambiguous, there is no room for judicial construction, and the courts must give it its plain and definite meaning." *Lemons v. Old Hickory Council, Boy Scouts of Am., Inc.,* 322 N.C. 271, 276, 367 S.E.2d 655, 658 (1988). "But where a statute is ambiguous, judicial construction must be used to ascertain the legislative will." *Burgess v. Your House of Raleigh, Inc.,* 326 N.C. 205, 209, 388 S.E.2d 134, 136-37 (1990). Furthermore, "where a literal interpretation of the language of a statute will . . . contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and pur-

5. Defendant's 12 November 1991 conviction for possession of cocaine was governed by a prior version of section 90-95(d)(2). *See* N.C.G.S. § 90-95(d)(2) (Supp. 1991) (amended 1993). Although section 90-95(d)(2) has been subsequently amended on several occasions, the text of the statute relevant to the issue presented by this appeal remains the same today as it appeared in November 1991. For convenience, we refer only to the current version of section 90-95(d)(2) in our opinion.

pose of the law shall control and the strict letter thereof shall be disregarded." *State v. Barksdale*, 181 N.C. 621, 625, 107 S.E. 505, 507 (1921), *quoted in Frye Reg'l Med. Ctr., Inc. v. Hunt*, 350 N.C. 39, 45, 510 S.E.2d 159, 163 (1999).

As with any other statute, the legislative intent controls the interpretation of a criminal statute. *State v. Hearst*, 356 N.C. 132, 136-37, 567 S.E.2d 124, 128 (2002). We generally construe criminal statutes against the State. *Id.* at 136, 567 S.E.2d at 128. However,

"[t]he canon in favor of strict construction [of criminal statutes] is not an inexorable command to override common sense and evident statutory purpose. . . . Nor does it demand that a statute be given the 'narrowest meaning'; it is satisfied if the words are given their fair meaning in accord with the manifest intent of the lawmakers."

*United States v. Brown*, 333 U.S. 18, 25-26, 92 L. Ed. 442, 448 (1948) (quoting *United States v. Raynor*, 302 U.S. 540, 552, 82 L. Ed. 2d 413, 420 (1938)), *quoted in Hearst*, 356 N.C. at 137, 567 S.E.2d at 128; *see also United States v. Giles*, 300 U.S. 41, 48, 81 L. Ed. 493, 497 (1936).

Defendant's interpretation of section 90-95(d)(2) evinces, at best, an ambiguity in the General Assembly's use of the phrase "punishable as a . . . felony," thus making the statute susceptible to more than one interpretation. We believe an interpretation other than the one asserted by defendant controls the meaning of N.C.G.S. § 90-95(d)(2). The first sentence of section 90-95(d)(2), providing that a person found guilty of possession of a Schedule II, III, or IV controlled substance is "guilty of a . . . misdemeanor," is a general provision governing convictions for possession of Schedule II, III, or IV controlled substances. N.C.G.S. § 90-95(d)(2). The next two sentences of the statute are exceptions to that general rule, by which the General Assembly chose to treat the possession of certain controlled substances differently by elevating them to felony status.

Pursuant to these exceptions, when a person is found in possession of the substances listed, a conviction for that crime is "punishable as a Class I felony." *Id.* Under N.C.G.S. § 90-95(d)(2), the phrase "punishable as a Class I felony" does not simply denote a sentencing classification, but rather, dictates that a conviction for possession of the substances listed therein, including cocaine, is elevated to a felony classification for all purposes. Concerning the controlled substances listed therein, the specific exceptions contained in section

90-95(d)(2) control over the general rule that possession of any Schedule II, III, or IV controlled substance is a misdemeanor. *See State ex rel. Utils. Comm'n v. Lumbee River Elec. Membership Corp.*, 275 N.C. 250, 260, 166 S.E.2d 663, 670 (1969) ("It is a well established principle of statutory construction that a section of a statute dealing with a specific situation controls, with respect to that situation, other sections which are general in their application.").

II.

Our interpretation of N.C.G.S. § 90-95(d)(2) is not only supported by the statute's language and phrasing but also accords with the statute's legislative history. The legislative intent of a statute may first be ascertained through examining the language of the statute, and then by examining the statute's legislative history, the spirit of the statute, and the goal that the statute seeks to accomplish. *Lenox, Inc. v. Tolson*, 353 N.C. 659, 664, 548 S.E.2d 513, 517 (2001); *see also Burgess*, 326 N.C. at 216, 388 S.E.2d at 141 ("Legislative history is a factor to consider in determining legislative intent.").

In 1971 the General Assembly enacted the North Carolina Controlled Substances Act "to revise the laws concerning drugs, the various illegal and dangerous drugs and drug substances." Act of July 19, 1971, ch. 919, 1971 N.C. Sess. Laws 1477 (codified as N.C.G.S. §§ 90-86 to -113.8). Pursuant to the Controlled Substances Act, the General Assembly categorized various drugs into one of six schedules, *see* ch. 919, sec. 1, 1971 N.C. Sess. Laws at 1481-88 (codified as N.C.G.S. §§ 90-89 to -94), and classified offenses involving these drugs as either misdemeanors or felonies, *see id.* at 1488-90 (codified as N.C.G.S. § 90-95). Prior to the enactment of the Controlled Substances Act, possession of cocaine was a misdemeanor. *See State v. Miller*, 237 N.C. 427, 429, 75 S.E.2d 242, 243 (1953) (concluding that because a person convicted under the Uniform Narcotic Drug Act, the predecessor to the Controlled Substances Act, was not punished "by either death or imprisonment in the State's Prison . . . they must be punished as misdemeanants rather than as felons"). Relevant to our discussion here, the 1971 General Assembly classified coca leaves or any derivative thereof, presumably including cocaine, as a Schedule II controlled substance, *see* ch. 919, sec. 1, 1971 N.C. Sess. Laws at 1483 (originally codified as N.C.G.S. § 90-90(a)4.), and further provided that a person in possession of a Schedule II controlled substance "shall be guilty of a felony and shall be sentenced to a term of imprisonment of not more than five years or fined not more than five

thousand dollars ($5,000) or both in the discretion of the court," *id.* at 1488 (originally codified as N.C.G.S. § 90-95(c)). Thus, it appears that under the Controlled Substances Act as originally enacted, possession of cocaine was a felony.

The General Assembly amended the Controlled Substances Act in 1973 to increase the penalties for certain violations. Act of May 22, 1973, ch. 654, 1973 N.C. Sess. Laws 967 (rewriting N.C.G.S. § 90-95, amending N.C.G.S. § 90-96, and adding N.C.G.S. § 90-96.1). Specifically, the revised N.C.G.S. § 90-95 provided in pertinent part, that those persons in possession of either a Schedule II, III, or IV controlled substance

> shall be guilty of a misdemeanor . . . ; but if the quantity of the controlled substance . . . exceeds 100 tablets, capsules, or other dosage units, or equivalent quantity, the violation shall be a felony punishable by a term of imprisonment of not more than five years or a fine of not more than five thousand dollars ($5,000), or both in the discretion of the court.

*Id.* at 967-68 (codified as N.C.G.S. § 90-95(d)(2)). Thus, following the 1973 amendments, possession of a Schedule II, III, or IV controlled substance was generally classified as a misdemeanor, unless the quantity of the substance exceeded a certain amount; then the classification for possession of those substances was a felony.

The following year, the General Assembly further amended N.C.G.S. § 90-95(d)(2) to specifically provide that "one gram or more of cocaine" was "equivalent" to the threshold number of pills or other dosage units that would convert a possession violation from a misdemeanor to a felony. Act of April 12, 1974, ch. 1358, sec. 10, 1973 N.C. Sess. Laws (2d Sess. 1974) 722, 724. Thus, effective 12 April 1974, section 90-95(d)(2) provided, in pertinent part, that those in possession of a Schedule II controlled substance "shall be guilty of a misdemeanor . . . ; but if the quantity of the controlled substance . . . exceeds 100 tablets, capsules or other dosage units, or equivalent quantity, including . . . one gram or more of cocaine, the violation shall be a felony punishable by a term of imprisonment" or a fine, or both. *Id.* at 724-25.

In 1979 the General Assembly enacted the Fair Sentencing Act as part of "a movement away from indeterminate sentencing and toward the imposition of presumptive terms for specified crimes." *State v. Thompson,* 310 N.C. 209, 219, 311 S.E.2d 866, 872 (1984),

*overruled in part on other grounds by State v. Vandiver*, 321 N.C. 570, 573-74, 364 S.E.2d 373, 375-76 (1988); *see also* Act of June 4, 1979, ch. 760, 1979 N.C. Sess. Laws 850, 850 ("An Act to Establish a Fair Sentencing System in North Carolina Criminal Courts.") (codified as N.C.G.S. §§ 15A-1340.1 to -1340.7 (amended 1991) (repealed 1993)).[6] Although the Fair Sentencing Act was to become effective on 1 July 1980, it "underwent technical amendments in 1980 and more substantial amendments in 1981" and thus applied "only to felonies committed on or after 1 July 1981." *State v. Ahearn*, 307 N.C. 584, 594, 300 S.E.2d 689, 695 (1983). The new sentencing act established ten categories of felonies, Classes A through J. *See* ch. 760, sec. 1, 1979 N.C. Sess. Laws at 850 (codified as N.C.G.S. § 14-1.1). The Act also amended various sections of Chapter 14 of the North Carolina General Statutes to assign a specific class to each felony defined therein. *Id.*, sec. 5 at 859-71. The Act set a maximum prison term for each class, *id.*, sec. 1 at 850, as well as a presumptive prison term for Classes C through J, *id.*, sec. 2 at 853-54 (codified as N.C.G.S. § 15A-1340.4(f)). *See generally* Susan Kelly Nichols, Comment, *Criminal Procedure—The North Carolina Fair Sentencing Act*, 60 N.C. L. Rev. 631 (1982) (discussing in detail the Fair Sentencing Act and its effect on sentencing procedures in North Carolina).

Pursuant to the Fair Sentencing Act, the General Assembly amended several substantive criminal statutes, including N.C.G.S. § 90-95(d)(2), to remove references to the length of a particular felony sentence and replace those references with the appropriate felony class level. *See* ch. 760, sec. 5, 1979 N.C. Sess. Laws at 859-71. Similar to changes made to other criminal statutes, section 90-95(d)(2) was "amended by deleting the phrase 'a felony punishable by a term of imprisonment of not more than five years or a fine of not more than five thousand dollars ($5,000), or both, in the discretion of the court' and inserting *in lieu thereof* 'punishable as a Class I felony'." *Id.* at 870 (emphasis added). There was no indication in either the language of the statute or the legislative history that the General Assembly intended to classify possession of one gram or more of cocaine as a felony for sentencing purposes only. Rather, the General Assembly amended section 90-95(d)(2) to bring the statute in conformity with the Fair Sentencing Act's new felony classification system.

---

6. The principal provisions of the Fair Sentencing Act were contained in Chapter 15A, Article 81A of the North Carolina General Statutes; the Act also "resulted in revisions to other portions of the General Statutes." *State v. Ahearn*, 307 N.C. 584, 594 n.1, 300 S.E.2d 689, 695 n.1 (1983).

Subsequent to the enactment of the Fair Sentencing Act and prior to defendant's 1991 conviction for possession of cocaine, the General Assembly again amended N.C.G.S. § 90-95(d)(2) to add that, in addition to possession of cocaine, possession of certain derivatives of cocaine was also punishable as a felony. Act of April 27, 1987, ch. 105, sec. 4, 1987 N.C. Sess. Laws 102, 103. Moreover, in 1989 the General Assembly deleted the "one gram or more of" language in N.C.G.S. § 90-95(d)(2), thereby making possession of cocaine punishable as a felony without regard to quantity. Act of July 15, 1989, ch. 641, sec. 1, 1989 N.C. Sess. Laws 1761, 1761. The relevant session law was entitled "An Act to Make the Possession of Any Amount of Cocaine or Phenclyclidine *a Felony.*" *Id.* (emphasis added). The act's title, making no distinction between a classification for conviction purposes and for sentencing purposes, is further persuasive evidence that the General Assembly intended to classify possession of cocaine as a felony for all purposes. *See also State ex rel. Cobey v. Simpson,* 333 N.C. 81, 90, 423 S.E.2d 759, 764 (1992) (noting that " 'when the meaning of an act is at all doubtful, all the authorities now concur that the title should be considered' ") (quoting *State v. Woolard,* 119 N.C. 779, 780-81, 25 S.E. 719, 719 (1896)).

Amendments to section 90-95(d)(2) following defendant's 1991 conviction also support this conclusion. *See cf. Burgess,* 326 N.C. at 216, 388 S.E.2d at 141 ("Courts may use subsequent enactments or amendments as an aid in arriving at the correct meaning of a prior statute by utilizing the natural inferences arising out of the legislative history as it continues to evolve."). When enacting the Structured Sentencing Act in 1993, the General Assembly reinserted language into N.C.G.S. § 90-95(d)(2) making possession of "one gram or more of" cocaine, rather than any amount of cocaine, punishable as a felony. Act of July 24, 1993, ch. 539, sec. 1358.1, 1993 N.C. Sess. Laws 2370, 2823. However, prior to the 1 January 1995 effective date of that amendment, the General Assembly repealed the session law inserting the "one gram or more of" language. Act of March 14, 1994, ch. 11, sec. 1, 1993 N.C. Sess. Laws (Extra Sess. 1994) 22, 22 (providing that "[s]ection 1358.1 of Chapter 539 of the 1993 Session Laws is repealed"). The repealing act was entitled, in relevant part, "An Act to Repeal the Provision in the Structured Sentencing Act That Would Have Provided That Possession of Less Than One Gram of Cocaine Was Not *a Felony.*" *Id.* (emphasis added). Again, with no distinction made between convictions and sentences for possession of cocaine, the title provides yet another indication that the General Assembly

intended that possession of cocaine was to be classified as *a felony* for all purposes.

Furthermore, the legislative history of N.C.G.S. § 90-95(d)(2) evinces the General Assembly's acquiescence to the long-standing practice in our criminal justice system of classifying possession of cocaine as a felony. In *Wells v. Consol. Jud'l Ret. Sys.*, 354 N.C. 313, 553 S.E.2d 877 (2001), this Court upheld a state agency's interpretation of certain statutes governing the judicial-retirement system based in part upon the agency's long-standing adherence to that interpretation and the lack of legislative intervention. 354 N.C. at 319-20, 553 S.E.2d at 881. The agency in *Wells* was "established to administer the retirement statutes" and "ha[d] adhered to the same interpretation . . . since the 1970s." *Id.* at 319, 553 S.E.2d at 881. The Court in *Wells* stated that "[t]he legislature is presumed to act with full knowledge of prior and existing law," and "[w]hen the legislature chooses not to amend a statutory provision that has been interpreted in a specific way, we assume it is satisfied with the administrative interpretation." *Id.* Although it is this Court's ultimate duty to construe statutes, we "accord great weight to the administrative interpretation, especially when, as [in *Wells*], the agency's position has been long-standing and has been met with legislative acquiescence." *Id.* at 319-20, 553 S.E.2d at 881.

We have applied this principle of legislative acquiescence in the criminal context when the General Assembly failed to intervene in light of a long-standing judicial practice. *See, e.g., State v. Gardner*, 315 N.C. 444, 462, 340 S.E.2d 701, 713 (1986) (concluding that it was not double jeopardy to convict and sentence a defendant in the same trial for both breaking and/or entering and larceny when the Court "uniformly and frequently held, from as early as the turn of the century, that [the two crimes] are separate and distinct crimes," and "[those] many years of uniform construction have been acquiesced in by our legislature"); *State v. Council*, 129 N.C. 511, 513, 39 S.E. 814, 815 (1901) (recognizing that the General Assembly had previously acquiesced in the Court's century-old practice of granting petitions to rehear criminal cases).

Since insertion of the "punishable as a . . . felony" language into N.C.G.S. § 90-95(d)(2) in 1979, our judiciary, the branch of government responsible for the adjudication of criminal cases, has universally adhered to the practice of classifying possession of cocaine as a felony. Indeed, for almost twenty-five years, defendants charged with possession of cocaine, including defendant in the case *sub judice*,

have been indicted as felons and tried and convicted as felons in the Superior Court Division of the General Courts of Justice. We presume, as we must, that the General Assembly had full knowledge of the judiciary's long-standing practice. Yet, during the course of *multiple* clarifying amendments to N.C.G.S. § 90-95(d)(2) between 1979 and the present, at no time did the General Assembly amend section 90-95(d)(2) to convert the crime of possession of cocaine to misdemeanor status. If the General Assembly intended for possession of cocaine to be treated as a misdemeanor, "it could have addressed the matter during the course of these many years." *Gardner*, 315 N.C. at 463, 340 S.E.2d at 713. Because the General Assembly has not done so, it is clear that the legislature has acquiesced in the practice of classifying the offense of possession of cocaine as a felony.

## III.

We acknowledge that the General Assembly utilizes differing terminology to classify criminal offenses as felonies. *Compare* N.C.G.S. § 90-95(d)(2) (providing that possession of cocaine is "punishable as a Class I felony"), *with* N.C.G.S. § 90-95(e)(9) (providing that any person in possession of a controlled substance at "a penal institution or local confinement facility shall be guilty of a Class H felony"), *and* N.C.G.S. § 90-95(h)(3) (providing that a person who sells, manufactures, delivers, transports, or possesses twenty-eight grams of cocaine or more "shall be guilty of a felony"). However, we reject defendant's argument that these differences indicate the General Assembly's intent to create a special felony sentencing classification for possession of cocaine. We recognize that it is within the General Assembly's authority to create such a classification. *See cf. State v. Perry*, 316 N.C. 87, 101, 340 S.E.2d 450, 459 (1986). Nonetheless, given our review of the legislative history behind N.C.G.S. § 90-95(d)(2), we conclude that the General Assembly has not done so.

Furthermore, the use of the phrase "punishable as a . . . felony" is not limited to N.C.G.S. § 90-95(d)(2). The phrase is also the nomenclature used by our General Assembly to establish other serious felonies, including manslaughter, burglary, and kidnapping. To accept defendant's interpretation of the "punishable as" language and to take his argument to its logical end would necessarily lead us to the absurd conclusion that the General Assembly intended these and other serious crimes to be misdemeanors. We decline to do so.

The General Assembly routinely uses the phrases "punished as" or "punishable as" a "felony" or "felon" to classify certain crimes

as felonies. *See, e.g.*, N.C.G.S. § 14-18 (2003) (providing that "[v]oluntary manslaughter shall be punishable as a Class D felony, and involuntary manslaughter shall be punishable as a Class F felony"); N.C.G.S. § 14-30 (2003) (stating that a person who commits the crime malicious maiming "shall be punished as a Class C felon"); N.C.G.S. § 14-39(b) (2003) (noting that first-degree kidnapping "is punishable as a Class C felony" and that second-degree kidnapping "is punishable as a Class E felony"); N.C.G.S. § 14-52 (2003) (stating that "[b]urglary in the first degree shall be punishable as a Class D felony, and burglary in the second degree shall be punishable as a Class G felony"); N.C.G.S. § 14-58 (2003) (providing that first-degree arson "is punishable as a Class D felony" and that second-degree arson "is punishable as a Class G felony"); N.C.G.S. § 14-202.1(b) (2003) (stating that "[t]aking indecent liberties with children is punishable as a Class F felony"); N.C.G.S. § 20-106 (2003) (providing that a person guilty of receiving or transferring stolen vehicles "shall be punished as a Class H felon"); N.C.G.S. § 20-138.5(a), (b) (2003) (noting, pursuant to the habitual impaired driving statute, that if a person drives while impaired and has been convicted of three or more offenses involving impaired driving as defined by N.C.G.S. § 20-4.01(24a) within the previous seven years, that person "shall be punished as a Class F felon").

In addition, other statutes contain a structure similar to N.C.G.S. § 90-95(d)(2), in which a crime is classified as a misdemeanor, but elevated to a felony by the language "punishable" or "punished" as a "felony" or "felon" where special circumstances exist. These circumstances include the existence of a prior conviction, the use of deadly force or a dangerous weapon, the possession of an elevated quantity of an illegal substance, or the possession of a certain particularly problematic substance. *See, e.g.*, N.C.G.S. § 14-56.1 (2003) (providing that anyone who breaks into or forcibly opens a coin- or currency-operated machine "shall be guilty of a Class 1 misdemeanor, but if such person has previously been convicted of violating this section, such person shall be punished as a Class I felon"); N.C.G.S. § 14-56.3 (2003) (noting the same for the crime of breaking into paper currency machines); N.C.G.S. § 14-136 (2003) (stating that a person who sets fire to "grass and brushlands and woodlands" shall be "guilty of a Class 2 misdemeanor for the first offense" and "guilty of a Class 1 misdemeanor" for the second offense, but if the person intends to damage another's property, the person "shall be punished as a Class I felon"); N.C.G.S. § 14-288.9(c) (2003) (providing that any person who assaults emergency personnel "is guilty of a Class 1 misdemeanor,"

and any person who does so with a dangerous weapon or substance "shall be punished as a Class F felon"); N.C.G.S. § 90-95(d)(4) (stating that any person in possession of a Schedule VI controlled substance "shall be guilty of a Class 3 misdemeanor," but if that substance exceeds one-half of an ounce of marijuana or one-twentieth of an ounce of hashish, "the violation shall be punishable as a Class 1 misdemeanor"; and if the substance exceeds one and one-half ounces of marijuana or three-twentieths of an ounce of hashish, or consists of any quantity of synthetic tetrahydrocannabinols, "the violation shall be punishable as a Class I felony"); *see cf. State v. Mitchell*, 336 N.C. 22, 27, 442 S.E.2d 24, 26 (1994) (noting, in passing, that under N.C.G.S. § 90-95(d)(4), the State must prove that the defendant possessed more than one and one-half ounces of marijuana to convict the defendant of "the felony"); *State v. Sullivan*, 111 N.C. App. 441, 443, 432 S.E.2d 376, 378 (1993) (referring to a violation of N.C.G.S. § 14-56.1 as a *"felony-grade* breaking into a coin-operated machine" where the defendant had a prior conviction for such a violation) (emphasis added).

"It is well settled that the General Assembly and not the judiciary determines the minimum and maximum punishment which may be imposed on those convicted of crimes. The legislature alone can prescribe the punishment for those crimes." *Perry*, 316 N.C. at 101, 340 S.E.2d at 459. Part and parcel of the General Assembly's authority to prescribe criminal punishment is its authority to classify criminal offenses. In adopting defendant's narrow interpretation of N.C.G.S. § 90-95(d)(2), the Court of Appeals improvidently rewrote our General Statutes by, in essence, judicially reclassifying dozens of crimes as misdemeanors in contravention of the General Assembly's authority and long-standing practice. Accordingly, we conclude that under N.C.G.S. § 90-95(d)(2), the offense of possession of cocaine is classified as a felony for all purposes.

IV.

[2] Finally, in the present case, *Jones*, 161 N.C. App. 60, 588 S.E.2d 5, a panel of the Court of Appeals concluded that possession of cocaine was a misdemeanor, despite a prior published decision by another panel of that court holding that possession of cocaine is a felony. *See State v. Chavis*, 134 N.C. App. 546, 555, 518 S.E.2d 241, 248 (1999) (concluding that N.C.G.S. § 90-95(d)(2) "clearly states that the possession of any amount of cocaine is a felony"), *appeal dismissed and disc. rev. denied*, 351 N.C. 362, 542 S.E.2d 220 (2000). In a subsequent

STATE v. JONES

[358 N.C. 473 (2004)]

decision for which this Court has also allowed discretionary review, *State v. Sneed*, 161 N.C. App. 331, 588 S.E.2d 74 (2003), another panel of the Court of Appeals acknowledged that court's prior holding in *Chavis*, but followed *Jones* and its independent review of N.C.G.S. § 90-95(d)(2) to conclude that possession of cocaine is a misdemeanor. Given that *Chavis*, *Jones*, and *Sneed* concern the interpretation of the same statute, the Court of Appeals panel in the present action, *Jones*, and the panel in *Sneed* effectively overruled the Court of Appeals decision in *Chavis*. In so doing, the two panels ignored a well-established rule of appellate law: "Where a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." *In re Appeal from Civil Penalty Assessed for Violations of Sedimentation Pollution Control Act*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989). While we recognize that a panel of the Court of Appeals may disagree with, or even find error in, an opinion by a prior panel and may duly note its disagreement or point out that error in its opinion, the panel is bound by that prior decision until it is overturned by a higher court.

In conclusion, because N.C.G.S. § 90-95(d)(2) classifies possession of cocaine as a felony, defendant's 1991 conviction for possession of cocaine was sufficient to serve as an underlying felony for his habitual felon indictment, and thus, defendant's habitual felon indictment was valid.

Accordingly, we reverse in part the decision of the Court of Appeals and remand this case to that court for further remand to the Superior Court, Forsyth County, for proceedings not inconsistent with this opinion.

REVERSED IN PART AND REMANDED.