An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-341

NORTH CAROLINA COURT OF APPEALS

Filed: 16 September 2014

STATE OF NORTH CAROLINA

v.

Guilford County
No. 03 CRS 70577

JORGE HUERTA-NESTOR CHAVEZ,
        Defendant.


Appeal by defendant from judgment entered 23 September 2013 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 28 August 2014.

> *Attorney General Roy Cooper, by Special Deputy Attorney General Daniel P. O'Brien, for the State.*

> *Jarvis John Edgerton, IV, for defendant-appellant.*


GEER, Judge.


Defendant Jorge Huerta-Nestor Chavez appeals from a judgment sentencing him on one count of second degree murder. In 2003, defendant was indicted for two counts of first degree murder. Later that year, pursuant to a plea agreement, defendant pled guilty to two counts of second degree murder. He was sentenced on one count, but prayer for judgment was

continued on the second count to allow defendant to provide assistance in locating and prosecuting a codefendant.

Defendant was not sentenced for the second count of murder until September 2013, 10 years later. On appeal, defendant argues solely that the sentencing court lacked jurisdiction to sentence him in 2013 because the State failed to move for imposition of a sentence within a reasonable time after defendant pled guilty in 2003. Because defendant's challenge to the trial court's jurisdiction falls outside the scope of his statutory right to appeal from a guilty plea, we must dismiss this appeal.

## Facts

On the evening of 12 December 2002, Carmelo Rojas-Hernandez drove with members of his family to Lera's Dance Club in Ruffin, North Carolina. Defendant and Arturo Martinez were also at Lera's that evening. While Mr. Rojas-Hernandez' stepdaughter and her female friend -- both of whom were 13 or 14 years old -- were dancing, Mr. Martinez approached and began making inappropriate advances toward them. Mr. Rojas-Hernandez informed Mr. Martinez of the girls' ages and told Mr. Martinez to stop harassing them.

Later, Lera's security personnel escorted Mr. Martinez out of the building, and defendant left with him. The two men then

waited outside Lera's in the parking lot. Mr. Rojas-Hernandez and his family left Lera's shortly after the incident in their Trailblazer. Defendant and Mr. Martinez followed the Trailblazer in defendant's car with defendant driving. Once the cars were on U.S. Highway 29, defendant pulled his car alongside the Trailblazer. Two shots were fired from defendant's car striking Mr. Rojas-Hernandez and his wife, Elaine Parrish-Rojas, in the head and ultimately killing both of them.

Defendant admitted to driving the car during the shooting, but claimed that Mr. Martinez was the shooter. According to defendant, Mr. Martinez ordered him to drive the car alongside the Trailblazer and threatened to kill defendant if he did not do so. Defendant and Mr. Martinez fled to Mexico after the shooting. However, defendant soon returned to the United States without Mr. Martinez in order to find work. Shortly thereafter, defendant was arrested and extradited to North Carolina.

On or about 21 April 2003, defendant was indicted for two counts of first degree murder for the killings of Mr. Rojas-Hernandez and Ms. Parrish-Rojas. Pursuant to a plea agreement, defendant pled guilty on 3 October 2003 to two counts of second degree murder. At the plea hearing in Guilford County Superior court on 3 November 2003, Judge Michael E. Helms entered judgment against defendant for the murder of Ms. Parrish-Rojas

and sentenced him to a presumptive-range term of 157 to 198 months imprisonment. The plea agreement provided that "prayer for judgment will be continued [for the murder of Mr. Rojas-Hernandez] until 8 December 2003 and from term to term thereafter as necessary in order for defendant to comply with the terms of this agreement." The plea agreement resulting in the prayer for judgment continued ("PJC") included several conditions:

> 4. That [defendant] will voluntarily appear and testify at the trial(s) of Arturo Hernandez Martinez arising from the offenses committed on 15 December 2002.

> 5. That [defendant] will voluntarily appear and testify at any other trials resulting from investigations in which he participates pursuant to his agreement herein.

> 6. That said testimony shall be truthful, complete, and not inconsistent with the statement(s) given to the Guilford County District Attorney's Office and the Greensboro Police Department pursuant to the terms of this agreement.

At the end of the plea hearing, Judge Helms remarked: "No one can guarantee what the judgment of the Defendant will be in the second case, but I would suggest that . . . the more assistance [he] can offer, the better will be his position as to the second case when it comes to sentencing. It may not help

him a bit, but it certainly wouldn't hurt him to have lent the assistance he possibly can in apprehending the codefendant." Defendant was then placed in the custody of the North Carolina Department of Corrections.

After the plea hearing, defendant appears to have been under the impression that the charge for the murder of Mr. Rojas-Hernandez was still pending. On 23 May 2004 and again on 12 July 2007, defendant sent a pro se "Speedy Trial Letter" to the Clerk of Court for Guilford County Superior Court "requesting a speedy trial under . . . General Statute 15A-711 concerning docket number[] 03 CRS 070577: [for the murder of Mr. Rojas-Hernandez]." On 16 November 2011, defendant filed a pro se "Motion To Proceed Under Article 36" with regard to the murder of Mr. Rojas-Hernandez in which he "categorically state[d] his factual and legal innocense [sic]," stated that he "will exercise his right to a trial by jury," and "exert[ed] his right pursuant to Section (c) of 15A-711 to proceed."

At some point, defendant's trial counsel, Wayne Baucino, and the Assistant District Attorney for Guilford County responsible for prosecuting defendant's case, Maury Hubbard, appeared before Judge Henry E. Frye, Jr. apparently for a hearing relating to defendant's PJC, although defendant was not present. At that hearing, Mr. Martinez had yet to be located,

and "it was agreed that . . . we'd just wait longer, to see if we were able to procure [Mr. Martinez]." In either 2010 or 2011, Mr. Baucino and Mr. Hubbard sat down with defendant to "tr[y] to find out if there was any additional information that he had received while in prison [about Mr. Martinez], through contacts with family and so forth. He was basically able to provide the Mexican state where he believed [Mr. Martinez] to be . . . [along with] the name of a village, and some other things of that nature." However, Mr. Martinez was never located.

On 20 September 2012, defendant filed a pro se motion with the Guilford County Superior Court requesting the preparation of a transcript from his 2003 plea hearing. On 6 March 2013, Judge Patrice H. Hinnant granted the motion for a transcript.

On 23 September 2013, Judge William Z. Wood, Jr. held a sentencing hearing with respect to defendant's guilty plea to the second degree murder of Mr. Rojas-Hernandez. The prosecutor explained that "[defendant] did, insofar as he was able, do what he was supposed to do, in terms of providing information [about Mr. Martinez]." However, because Mr. Martinez was never located, defendant was unable to fully comply with the terms of his plea agreement.

Mr. Baucino argued that because defendant "[did] everything he could possibly do to comply with the terms of the agreement,"

he should be given a sentence that ran concurrently with his sentence for the murder of Ms. Parrish-Rojas that he was already serving. Mr. Baucino suggested that this outcome would "honor the spirit of the [plea] agreement." Mr. Baucino also argued the existence of several mitigating factors.

Following defense counsel's arguments, Judge Wood found the existence of several mitigating factors, including that defendant cooperated at an early stage of the investigation; he accepted responsibility; he was prepared to testify against Mr. Martinez; and he played a minor role in the commission of the offense. Judge Wood then sentenced defendant for the second degree murder of Mr. Rojas-Hernandez to a mitigated-range term of 94 to 122 months. Judge Wood ordered that the sentence run consecutively to the sentence defendant was already serving for the murder of Ms. Parrish-Rojas. Defendant timely appealed to this Court.

## Discussion

Defendant argues that the trial court had no jurisdiction to impose a sentence for the murder of Mr. Rojas-Hernandez 10 years after accepting defendant's guilty plea. While defendant consented to the PJC in his plea agreement, defendant argues he withdrew his consent to the PJC with his 2004 Speedy Trial Letter and that the nine-year delay between the withdrawal of

his consent and his sentencing in 2013 was unreasonable. Citing *State v. Degree*, 110 N.C. App. 638, 430 S.E.2d 491 (1993), defendant asserts that because of the unreasonable delay, the trial court no longer had jurisdiction to sentence defendant for the murder of Mr. Rojas-Hernandez.

In determining whether a delay in sentencing "deprive[s] [the] trial court of jurisdiction," *Degree* held that "[t]he continuance may be for a definite or indefinite period of time, but in any event the sentence must be entered 'within a reasonable time' after the conviction or plea of guilty." *Id.* at 641, 430 S.E.2d at 493 (quoting 21 Am. Jur. 2d *Criminal Law* § 526, at 870 (1981)). "Deciding whether sentence has been entered within a 'reasonable time' requires consideration of the reason for the delay, the length of the delay, whether defendant has consented to the delay, and any actual prejudice to defendant which results from the delay." *Id.* (quoting 21 Am. Jur. 2d *Criminal Law* § 561, at 924 (1981)).

The State has, however, moved to dismiss defendant's appeal on the grounds that it does not fall within the limited bases for appeal of a guilty plea authorized by N.C. Gen. Stat. § 15A-1444 (2013). "In North Carolina, a defendant's right to appeal in a criminal proceeding is purely a creation of state statute. Furthermore, there is no federal constitutional right obligating

courts to hear appeals in criminal proceedings." *State v. Pimental*, 153 N.C. App. 69, 72, 568 S.E.2d 867, 869 (2002) (internal citations omitted).

Under N.C. Gen. Stat. § 15A-1444, a defendant who has pled guilty has a right to appeal only the following issues: (1) whether the sentence is supported by the evidence (if the minimum term of imprisonment does not fall within the presumptive range); (2) whether the sentence results from an incorrect finding of the defendant's prior record level under N.C. Gen. Stat. § 15A-1340.14 (2013) or the defendant's prior conviction level under N.C. Gen. Stat. § 15A-1340.21 (2013); (3) whether the sentence contains a type of sentence disposition or term of imprisonment not authorized by N.C. Gen. Stat. § 15A-1340.17 (2013) or § 15A-1340.23 (2013) for the defendant's class of offense and prior record or conviction level; (4) whether the trial court improperly denied the defendant's motion to suppress; and (5) whether the trial court improperly denied the defendant's motion to withdraw his guilty plea. *State v. Jamerson*, 161 N.C. App. 527, 528-29, 588 S.E.2d 545, 546-47 (2003).

Defendant's jurisdictional challenge does not fall within any of the provisions of N.C. Gen. Stat. § 15A-1444. Our Supreme Court has held: "While it is true that a defendant may

challenge the jurisdiction of a trial court, such challenge may be made in the appellate division only if and when the case is properly pending before the appellate division." *State v. Absher*, 329 N.C. 264, 265 n.1, 404 S.E.2d 848, 849 n.1 (1991) ("*Absher I*"). *See also Jamerson*, 161 N.C. App. at 529, 588 S.E.2d at 547 (accord). Because defendant does not have a statutory right to challenge the trial court's jurisdiction on appeal, we are without authority to hear defendant's appeal.

Nonetheless, defendant contends that his appeal falls under N.C. Gen. Stat. § 15A-1444(a1), which provides:

> A defendant who has been found guilty, or entered a plea of guilty or no contest to a felony, is entitled to appeal as a matter of right the issue of whether his or her sentence is supported by evidence introduced at the trial and sentencing hearing only if the minimum sentence of imprisonment does not fall within the presumptive range for the defendant's prior record or conviction level and class of offense. Otherwise, the defendant is not entitled to appeal this issue as a matter of right but may petition the appellate division for review of this issue by writ of certiorari.

Defendant argues that he "is indeed challenging . . . whether his mitigated sentence was supported by the evidence" in that "the sentence was not supported by evidence the sentencing court had jurisdiction to enter any sentence[.]"

Defendant's argument is foreclosed by *Absher I*. In *Absher I*, the defendant pled guilty to operating a motor vehicle while

impaired. 329 N.C. at 265, 404 S.E.2d at 849. As explained in a subsequent appeal in the same case, *State v. Absher*, 335 N.C. 155, 156, 436 S.E.2d 365, 366 (1993) ("*Absher II*"), "[t]he prayer for judgment was in effect continued from term to term when a sentence was not imposed[,]" and a sentence was not imposed until five months after defendant's plea was entered. In *Absher I*, defendant argued that the trial court lacked jurisdiction to impose a sentence five months after the PJC. *See Absher II*, 335 N.C. at 156, 436 S.E.2d at 366. The State moved to dismiss the defendant's appeal on the same grounds asserted in this case: that the defendant's appeal did not fall within the statutory grounds for appeal from a guilty plea. *Absher I*, 329 N.C. at 265, 404 S.E.2d at 849. Although this Court denied the State's motion to dismiss and vacated the defendant's sentence, the Supreme Court reversed, explaining that "[t]he Court of Appeals erred in failing to dismiss defendant's appeal" because "defendant [was] not entitled to appeal as a matter of right from the judgment entered on his plea of guilty." *Id.*

This appeal is indistinguishable from *Absher I*. Based on *Absher I*, we must hold that defendant's argument does not fall within any of the statutory grounds for appeal from a guilty plea. *Absher I* establishes further that it is immaterial that

defendant is challenging the jurisdiction of the trial court. We are bound by our Supreme Court's decision in *Absher I* and, therefore, dismiss defendant's appeal.

Defendant, however, argues that *Degree* supports the conclusion that this Court has jurisdiction over his argument. *Degree* could not, however, have overruled *Absher I*'s holding that this Court lacked jurisdiction over an appeal contending that the trial court lacked jurisdiction to sentence a defendant following a PJC after an unlawful delay. *See Andrews v. Haygood*, 188 N.C. App. 244, 248, 655 S.E.2d 440, 443 (2008) ("'[T]his Court has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions[.]'" (quoting *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992), *rev'd on other grounds*, 334 N.C. 115, 431 S.E.2d 178 (1993))). We note that the full basis for the decision in *Absher I* was not apparent until *Absher II*, an opinion that came down after this Court's decision in *Degree*.

Regardless, *Degree* did not expressly address whether this Court had jurisdiction and was not required to do so since defendant made two arguments on appeal: (1) that defendant's sentence was unreasonably delayed following the PJC, and (2) that the trial court improperly based the defendant's sentence on a nonstatutory aggravating factor. 110 N.C. App. at 640,

642, 430 S.E.2d at 492-93, 494. The defendant in *Degree* was entitled under N.C. Gen. Stat. § 15A-1444(a1) (1991) to appeal whether the trial court properly sentenced him in the aggravated range. This Court therefore had jurisdiction over the appeal. *See State v. Jones*, 161 N.C. App. 60, 64, 588 S.E.2d 5, 9 (2003) ("Although our power to consider jurisdiction is limited to those cases properly pending before the Court, we may consider the issue here because defendant has a right to appeal his motion to suppress [under N.C. Gen. Stat. § 15A-1444]."), *rev'd in part on other grounds*, 358 N.C. 473, 598 S.E.2d 125 (2004).

In defendant's response to the State's motion to dismiss, defendant further argues that his sentence for the murder of Mr. Rojas-Hernandez was the result of ineffective assistance of counsel ("IAC"). Because we do not have jurisdiction over defendant's appeal, defendant's IAC claim should be raised in the trial court in a motion for appropriate relief under N.C. Gen. Stat. § 15A-1415 (2013).

Dismissed.

Judge STEELMAN concurs.

Judge ROBERT N. HUNTER, JR. concurred in this opinion prior to 6 September 2014.

Report per Rule 30(e).