Justice BEASLEY dissenting.
In this case the conduct for which defendant was sentenced was his possession of between one-half ounce and one and one-half ounces of marijuana. The majority's statutory interpretation affirms a sentence that first elevates a Class 1 misdemeanor to a Class I felony due to defendant's past conduct and second, based on this "felony," further enhances defendant's sentence to a Class E felony also due to defendant's past conduct. I dissent from the majority opinion because I do not believe this Court's opinion in State v. Jones controls the interpretation of this statutory provision, and furthermore, under the majority's interpretation **656 of how these provisions work together, the sentence is not proportional to the crime and is excessive in light of defendant's charged conduct.
First, Jones is distinguishable from this case because in Jones , the Court interpreted *576 an entirely different provision in N.C.G.S. § 90-95. See generally State v. Jones , 358 N.C. 473, 598 S.E.2d 125 (2004) (interpreting N.C.G.S. § 90-95(d)(2) to conclude that the possession of cocaine is classified as a Class I felony rather than enhanced from a Class 1 misdemeanor to a Class I felony). The Court's interpretation in Jones of N.C.G.S. § 90-95(d)(2) should not control how we interpret N.C.G.S. § 90-95(e)(3). In Jones the provision at issue stated, "If the controlled substance is ... cocaine ... the violation shall be punishable as a Class I felony ." 358 N.C. at 476-77, 598 S.E.2d at 127 (quoting N.C.G.S. § 90-95(d)(2) (2003) (emphasis added) ). The language and structure of subdivision 90-95(d)(2) as analyzed in Jones are analogous to subdivision 90-95(d)(4)[1] and, in this case, support the majority's interpretation of subdivision 90-95(d)(4) to elevate defendant's Class 3 misdemeanor to a Class 1 misdemeanor just as Jones elevated the defendant's Class 1 misdemeanor to a Class I felony.
But the majority's next analytical step-the elevation of the substantive offense from a Class 1 misdemeanor to a Class I felony under subdivision 90-95(e)(3)[2] -is not controlled by Jones . Despite this Court's dicta that the General Assembly "routinely uses the phrases 'punished as' or 'punishable as' a 'felony' or 'felon' to classify certain crimes as felonies," Jones , 358 N.C. at 484-85, 598 S.E.2d at 132 (citations omitted), **657 a statutory provision using the language "punished as" was not at issue in Jones . The General Assembly used different language in subdivision 90-95(e)(3) than it used in subdivisions 90-95(d)(2) and 90-95(d)(4). The language at issue in this case reads: "If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses ... punishable under ... this Article, he shall be punished as a Class I felon," N.C.G.S. § 90-95(e)(3) (2017) (emphasis added), while the language at issue in Jones was "[i]f the controlled substance is ... cocaine ... the violation shall be punishable as a Class I felony," Jones , 358 N.C. at 476-77, 598 S.E.2d at 127 (emphasis modified from original) (quoting N.C.G.S § 90-95(d)(2) (2003) ). The subject of the phrase at issue in Jones indicates the focus of the provision is on the violation itself, namely, possession of cocaine, thus supporting a conclusion that the provision constitutes an escalation of the classification of the offense, namely, "any person" previously convicted of a drug-related violation, see N.C.G.S. § 90-95(d)(2) (2017) ; however, the subject of the language at issue here indicates the focus is on the defendant , which supports an analysis that the provision constitutes a sentence enhancement, see id. § 90-95(e)(3). Thus, our determination of legislative intent in Jones relating to a different provision containing different language is not controlling in this case.[3] *577 **658 Because Jones does not control, I believe the interpretation of N.C.G.S. § 90-95(e)(3) is a matter of first impression. The plain language of subdivision 90-95(e)(3)-that "[defendant] shall be punished as a Class I felon"-is subject to two competing interpretations: (1) the provision serves as a sentencing enhancement, meaning defendant should receive the sentence associated with a Class I felony; or (2) the provision elevates the substantive conviction from a misdemeanor to a felony. See N.C.G.S. § 90-95(e)(3). Reasonable minds could differ regarding the meaning of this provision, based on its plain language. The ambiguity is not helped by the fact that the final sentence in subdivision (e)(3) states that "[t]he prior conviction [is] used to raise the current offense to a Class I felony ." Id. The former interpretation is the argument defendant makes in this case and the view taken by the Court of Appeals, see State v. Howell , --- N.C.App. ----, ----, 792 S.E.2d 898, 901 (2016) (only analyzing the plain language to support the conclusion that the provision is a sentencing enhancement), while the latter is the interpretation of the State and the majority of this Court.
When the provision at issue is read along with other provisions within section 90-95, it is apparent that the General Assembly used three separate phrases to reflect how defendants should be punished-"the violation shall be punishable as"; "[defendant] shall be punished as"; and "[defendant] shall be guilty of." See N.C.G.S. § 90-95 (2017). The General Assembly used varying language within subdivision (e)(3) itself and across its eight provisions, indicating there should be some difference in how subdivisions (e)(3), (e)(5), (e)(8), and (e)(10) should operate versus subdivisions (e)(4), (e)(7) and (e)(9). See id. § 90-95(e). Because "different words used in the same statute should be assigned different meanings," In re M.I.W ., 365 N.C. 374, 379, 722 S.E.2d 469, 473 (2012) (quoting Ferrell v. Express Check Advance of SC LLC , 591 F.3d 698, 704 (4th Cir. 2010) ), I conclude that the General Assembly chose these specific phrases for different operational purposes, though it is unclear exactly what was intended. Because the interpretation of these phrases has implications affecting other statutes, such as the habitual felon statute in this case, we should not assume they can be used interchangeably. See , e.g. , N.C.G.S. §§ 14-7.1 to -7.76 (2017). Since it is not clear what the General Assembly meant by using these various phrases, and the dueling interpretations create widely differing results-specifically, this defendant's potential maximum punishment of twenty-four versus eighty-eight months of active jail time-the rule of lenity should apply.
"The rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants. Deferring to the prosecuting branch's **659 expansive views of these statutes 'would turn [their] normal construction ... upside-down, replacing the doctrine of lenity with a doctrine of severity.' " Whitman v. United States , --- U.S. ----, 135 S.Ct. 352, 353, 190 L.Ed. 2d 381, 382 (2014) (mem.) (statement of Scalia, J.) (alterations in original) (quoting Crandon v. United States , 494 U.S. 152, 178, 110 S.Ct. 997, 108 L.Ed. 2d 132, 152 (1990) (Scalia, J., concurring in the judgment) ) denying cert. to United States v. Whitman , 555 Fed.Appx. 98 (2d Cir. 2014) ; accord State v. Hinton , 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007) ("In construing *578 ambiguous criminal statutes, we apply the rule of lenity, which requires us to strictly construe the statute."). The General Assembly's choice to separate sub- section 90-95(e) from sub-section 90-95(d) in the statutory structure indicates the legislature intended these two provisions to operate differently. In contrast to the language in subdivision 90-95(d)(4), subdivision 90-95(e)(3) focuses on a defendant's past conduct-specifically, the defendant's previous convictions. Construing the statute according to the rule of lenity, I read subdivision 95-90(e)(3) to have no effect on the substantive classification of the violation (as subdivision 90-95(d)(4) does). Rather, its sole effect is to enhance a defendant's sentence.
Moreover, under the majority's interpretation of the provision, subdivision 90-95(e)(3) is duplicative of the habitual felon statute when applied to defendant's case. Compare N.C.G.S. § 14-7.6 (providing that habitual felons[4] are "sentenced at a felony class level that is four classes higher than the principal felony for which the person was convicted") with id. § 90-95(e)(3) ("If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses under any law of North Carolina or any law of the United States or any other state, which offenses are punishable under any provision of this Article, he shall be punished as a Class I felon."). Both statutes target recidivists, raising the level at which a defendant is sentenced based on the defendant's past conduct, and reflect the intent of the legislature "to segregate that person from the rest of society for an extended period of time" when the individual displays a propensity for recidivism. State v. Kirkpatrick , 345 N.C. 451, 454, 480 S.E.2d 400, 402 (1997) (quoting Rummel v. Estelle , 445 U.S. 263, 284, 100 S.Ct. 1133, 63 L.Ed.2d 382, 397 (1980) ).
Here, however, because the majority's reasoning allows both the N.C.G.S. § 90-95(e)(3) and the habitual felon recidivist provisions to apply, defendant is punished doubly for his past conduct-specifically, **660 his 27 August 2003 conviction for felonious possession with intent to sell or deliver marijuana-in the instant case. Also, though not at issue in this case, one could anticipate a situation in which the majority's reasoning is applied to a defendant not yet qualified as an habitual felon, to convert that defendant into an habitual felon by treating a misdemeanor drug offense as a third and qualifying felony under subdivision 90-95(e)(3). Therefore, in considering the statutory framework as a whole, subdivision 90-95(e)(3) may have been intended to increase the punishment for those recidivist defendants who have committed multiple drug offenses, with the effect of assigning a defendant the same punishment as that imposed on a felon but not elevating his substantive conviction to a felony.
Finally, what is troubling about the majority's interpretation of how these various sentencing provisions work together is that this interpretation creates a penalty that is disproportionate in light of defendant's actual conduct reflected in this offense. The "deeply rooted" proportionality principle of sentencing, Solem v. Helm , 463 U.S. 277, 284-86, 103 S.Ct. 3001, 77 L.Ed. 2d 637, 645-57 (1983) (explaining the history behind the principle), dictates that "the punishment should fit the crime," Ewing v. California , 538 U.S. 11, 31, 123 S.Ct. 1179, 155 L.Ed. 2d 108, 124 (2003) (Scalia, J. concurring in the judgment) (defining the principle before disagreeing with the majority that the Framers included a proportionality principle within the Eighth Amendment that applies to noncapital cases).[5] "[T]he punishment ought to reflect the degree of moral culpability associated *579 with the offense for which it is imposed. Trivial offenses should attract only minor punishment and the most despicable offenses should be punished severely, **661 with punishment appropriately graduated for offenses that fall between these extremes." Ian P. Farrell, Gilbert & Sullivan & Scalia: Philosophy, Proportionality, & The Eighth Amendment , 55 Vill. L. Rev. 321, 337 (2010). Logically, because defendant's past conduct does not change the nature of the current crime for which he is being punished, his past criminal history should operate as a sentencing enhancement under subdivision 90-95(e)(3) rather than to reclassify a misdemeanor offense as a felony offense.
In this case the Court of Appeals majority was correct to conclude defendant's Class 1 misdemeanor should have been punished as a Class I felony, but the substantive offense should remain a Class 1 misdemeanor, and therefore, defendant's habitual felon status has no effect on his sentence. Howell , --- N.C.App. at ----, 792 S.E.2d at 901. Because the quantity of the marijuana, and not defendant's past conduct, is what controls the classification of the substantive offense under this statutory framework, and because this punishment does not "fit [defendant's] crime," I respectfully dissent.

This provision states, in relevant part, that "[i]f the quantity of the controlled substance exceeds one-half of an ounce (avoirdupois) of marijuana ..., the violation shall be punishable as a Class 1 misdemeanor." N.C.G.S. § 90-95(d)(4) (2017).

This section provides that "[t]he prescribed punishment and degree of any offense under this Article shall be subject to the following conditions, but the punishment for an offense may be increased only by the maximum authorized under any one of the applicable conditions:"
...
(3) If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses under any law of North Carolina or any law of the United States or any other state, which offenses are punishable under any provision of this Article, he shall be punished as a Class I felon. The prior conviction used to raise the current offense to a Class I felony shall not be used to calculate the prior record level.
N.C.G.S. § 90-95(e)(3) (2017).

Additionally, in Jones , the Court was able to defer to the way in which the crime of cocaine possession has been treated historically; that is, the Court was persuaded that the legislature intended to treat cocaine possession as a felony because possession of cocaine had always been a felony rather than a misdemeanor under the North Carolina Controlled Substances Act, regardless of the quantity of cocaine. See Jones , 358 N.C. at 479-84, 598 S.E.2d at 129-32. Due to the fact that this Court in Jones spent multiple pages discussing the twenty-five years of legislative deference to our treatment of that crime, I believe this Court was heavily persuaded by the legislative history of the way cocaine possession has been treated by the General Assembly. See id. at 479-84, 598 S.E.2d at 129-32. The offense of marijuana possession carries a markedly different legislative history that supports a different interpretative result than the one reached in Jones . Since the General Assembly enacted the Controlled Substances Act in 1971, marijuana possession offenses have always been classified based on the quantity of marijuana possessed, see , e.g. , State v. Mitchell , 336 N.C. 22, 27, 442 S.E.2d 24, 26 (1994), rather than the defendant's past conduct. Here defendant's conviction was for possession of between one-half and one and one-half ounces of marijuana, a crime that has been considered a misdemeanor since 1985. See Act of July 19, 1971, ch. 919, 1971 N.C. Sess. Laws 1477 (enacting the North Carolina Controlled Substances Act, classifying marijuana as a Schedule VI substance, and classifying the first and second offense of possession of marijuana as a misdemeanor regardless of quantity); Act of May 22, 1973, ch. 654, sec. 1, 1973 N.C. Sess. Laws. 967, 968 (changing classification of the offense of marijuana possession to a felony when the defendant possesses more than an ounce); Act of July 10, 1985, ch. 675, sec. 1, 1985 N.C. Sess. Laws 873, 873-84 (classifying marijuana possession as "a general misdemeanor" unless the quantity exceeds one and one-half ounces); see also N.C.G.S. § 90-95(d)(4) (classifying the offense of marijuana possession as a Class 1 misdemeanor if the quantity does not exceed one and one-half ounces).

An "habitual felon," under the statute, is "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof." N.C.G.S. § 14-7.1(a).

The U.S. Supreme Court has held that the principle of proportionality is contained within the Eighth Amendment's proscription of cruel and unusual punishments, and thus, the Federal Constitution prohibits sentences that are disproportionate to the crime committed. Helm , 463 U.S. at 284, 103 S.Ct. 3001, 77 L.Ed. 2d at 645 ; see generally Ewing, 538 U.S. 11, 123 S.Ct. 1179, 155 L.Ed. 2d 108 (despite the lack of a majority opinion, seven members of the Court agreed that a sentence is cruel and unusual within the meaning of the Eighth Amendment if the court finds it to be grossly disproportionate to the crime). Notably, in Ewing , Helm, and Rummel (cases all considering recidivists' sentences under the Eighth Amendment), the underlying crimes triggering the recidivist statute were substantively felonies. Ewing, 538 U.S. at 18-19, 123 S.Ct. 1179, 155 L.Ed. 2d at 115-16 ; Helm , 463 U.S. at 279-81, 103 S.Ct. 3001, 77 L.Ed.2d at 642-44 ; Rummel , 445 U.S. at 265-66, 100 S.Ct. 1133, 63 L.Ed. 2d at 385-86. There may be an even more persuasive Eighth Amendment argument when a crime typically classified and punished as a misdemeanor is escalated to a felony, triggering the recidivist statute and resulting in a disproportionate sentence. See Helm, 463 U.S. at 290-92, 103 S.Ct. 3001, 77 L.Ed. 2d at 649-50 (applying a three-factor test to strike down a sentence as significantly disproportionate after considering (1) the gravity of the offense versus the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for the commission of the same crime in other jurisdictions).