IN THE SUPREME COURT OF NORTH CAROLINA

No. 455PA16

Filed 6 April 2018

STATE OF NORTH CAROLINA

v.

WILLIAM SHELDON HOWELL

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, ___ N.C. App. ___, 792 S.E.2d 898 (2016), reversing a judgment entered on 9 December 2015 by Judge Mark E. Powell in Superior Court, Transylvania County, and remanding for resentencing. Heard in the Supreme Court on 11 December 2017.

*Joshua H. Stein, Attorney General, by Tracy Nayer, Assistant Attorney General, for the State-appellant.*

*Edward Eldred for defendant-appellee.*

MORGAN, Justice.

In this case we are called upon to determine whether language in N.C.G.S. § 90-95(e)(3) of the North Carolina Controlled Substances Act ("the Act"), which provides that a Class 1 misdemeanor "shall be punished as a Class I felon[y]" when the misdemeanant has committed a previous offense punishable under the Act, procedurally enhances punishment for the misdemeanor offense or instead creates a substantive felony offense. Relying on our reasoning in *State v. Jones*, 358 N.C. 473,

598 S.E.2d 125 (2004), we conclude that the General Assembly intended for subdivision (e)(3) to establish a separate felony offense rather than merely to serve as a sentence enhancement of the underlying misdemeanor.

On 27 October 2014, defendant William Sheldon Howell was indicted for several offenses alleged to have been committed on 10 October 2014, including possession with intent to sell or deliver approximately fifteen grams of marijuana, maintaining a dwelling used for keeping and selling marijuana, and knowingly possessing with the intent to use drug paraphernalia. Also on 27 October 2014, defendant was indicted for attaining the status of habitual felon. One of the three underlying felonies listed in the habitual felon indictment was a 27 August 2003 conviction in Buncombe County for felonious possession with intent to sell or deliver marijuana. As a result of the events of 10 October 2014, on 15 June 2015, defendant was further indicted for (1) possessing over one-half ounce but less than one and one-half ounces of marijuana, a Class 1 misdemeanor under N.C.G.S. § 90-95(d)(4) of the Act, and (2) having been previously convicted of an offense under the Act, namely, the above-referenced August 2003 conviction in Buncombe County.

On 9 December 2015, defendant entered into a plea agreement with the State, in which defendant would (1) plead guilty to the N.C.G.S. § 90-95(d)(4) marijuana possession charge, (2) acknowledge his prior convictions in violation of the Act, and (3) admit his habitual felon status in exchange for the State's dismissal of other pending charges. In the Superior Court, Transylvania County, Judge Mark E. Powell

accepted defendant's plea and entered a consolidated judgment on the charges, noting that, although the marijuana possession charge was "a Class 1 misdemeanor, . . . I'm treating it as a Class I felony because of the prior conviction. And that Class I felony because of the habitual felon status is punished as a Class E felony."[1] The trial court sentenced defendant to an active term of twenty-nine to forty-seven months, suspended the period of incarceration, and placed defendant on supervised probation for thirty-six months.

Defendant appealed to the North Carolina Court of Appeals, where he argued that the trial court erred by enhancing his sentence for misdemeanor possession of marijuana to a Class I felony due to his prior conviction under the Act and then from a Class I felony to a Class E felony based on his habitual felon status. In an opinion filed on 6 December 2016, the Court of Appeals agreed, reversing and remanding the case for resentencing. *State v. Howell*, ___ N.C. App. ___, 792 S.E.2d 898 (2016). The Court of Appeals reasoned that, "while defendant's Class 1 misdemeanor [was] punishable as a felony under the circumstances present here, the substantive offense remain[ed] a Class 1 misdemeanor" and defendant's "habitual felon [status could not] be used to further enhance a sentence that [wa]s not itself a substantive offense." *Id.* at ___, 792 S.E.2d at 901.

---

[1] The habitual felon statute provides that a person convicted of a felony who has attained habitual felon status "must . . . be sentenced and punished as an habitual felon." N.C.G.S. § 14-7.2 (2017). In turn, a defendant punished as an habitual felon receives a sentence four classes higher than the principal felony for which the person was convicted. *Id.* § 14-7.6 (2017).

The State sought discretionary review of the Court of Appeals decision, and this Court allowed the State's petition by order entered on 16 March 2017. When this Court looks at a determination of the Court of Appeals by way of discretionary review, our task "is to determine whether there is any error of law in the decision of the Court of Appeals and only the decision of that court is before us for review." *State v. Brooks*, 337 N.C. 132, 149, 446 S.E.2d 579, 590 (1994) (citations omitted).

The State contends that, in failing to discuss and apply this Court's opinion in *Jones*, the reasoning of which the State asserts is controlling here, the Court of Appeals erroneously determined that N.C.G.S. § 90-95(e)(3) does not create a substantive felony offense. We agree with the State's interpretation of the applicability of our decision in *Jones* to the case at bar.

An explanation of our resolution of the issue in this appeal is facilitated by a brief review of three subsections of section 90-95 of the Act: N.C.G.S. § 90-95(a), (d), and (e). The first subsection contains general provisions that criminalize making, selling, delivering, and possessing controlled substances and counterfeit controlled substances. N.C.G.S. § 90-95(a)(1), (2) (2017). Pertinent to this case, the third subdivision of subsection (a) makes it unlawful "[t]o possess a controlled substance." *Id.* § 90-95(a)(3) (2017).

The second of the cited subsections sets forth how violations of N.C.G.S. § 90-95(a)(3) are punished based upon what type of controlled substance is possessed. Under N.C.G.S. § 90-95(d), "any person who violates G.S. 90-95(a)(3) with respect to:"

(1) A controlled substance classified in Schedule I shall be punished as a Class I felon. However, if the controlled substance is MDPV and the quantity of the MDPV is 1 gram or less, the violation shall be punishable as a Class 1 misdemeanor.

(2) A controlled substance classified in Schedule II, III, or IV shall be guilty of a Class 1 misdemeanor. If the controlled substance exceeds four tablets, capsules, or other dosage units or equivalent quantity of hydromorphone or if the quantity of the controlled substance, or combination of the controlled substances, exceeds one hundred tablets, capsules or other dosage units, or equivalent quantity, the violation shall be punishable as a Class I felony. If the controlled substance is methamphetamine, amphetamine, phencyclidine, or cocaine and any salt, isomer, salts of isomers, compound, derivative, or preparation thereof, or coca leaves and any salt, isomer, salts of isomers, compound, derivative, or preparation of coca leaves, or any salt, isomer, salts of isomers, compound, derivative or preparation thereof which is chemically equivalent or identical with any of these substances (except decocanized coca leaves or any extraction of coca leaves which does not contain cocaine or ecgonine), the violation shall be punishable as a Class I felony.

(3) A controlled substance classified in Schedule V shall be guilty of a Class 2 misdemeanor;

(4) A controlled substance classified in Schedule VI shall be guilty of a Class 3 misdemeanor, but any sentence of imprisonment imposed must be suspended and the judge may not require at the time of sentencing that the defendant serve a period of imprisonment as a special condition of probation. If the quantity of the controlled substance exceeds one-half of an ounce (avoirdupois) of marijuana or one-twentieth of an ounce (avoirdupois) of the extracted resin of marijuana, commonly known as hashish, the violation shall be punishable as a Class 1 misdemeanor. If the quantity of the controlled substance exceeds one and one-half

ounces (avoirdupois) of marijuana, or three-twentieths of an ounce (avoirdupois) of the extracted resin of marijuana, commonly known as hashish, or if the controlled substance consists of any quantity of synthetic tetrahydrocannabinols or tetrahydrocannabinols isolated from the resin of marijuana, the violation shall be punishable as a Class I felony.

*Id.* § 90-95(d) (2017). Thus, possession of marijuana falls under subdivision (d)(4), which mandates that possession of more than one-half but less than one and one-half ounces of that controlled substance—the amount defendant here pleaded guilty to possessing—is "punishable as a Class 1 misdemeanor." *Id.* § 90-95(d)(4). But, the provisions of subdivision (d)(4) are subject to modification by subsection (e), which specifies different punishments for possession of controlled substances under certain conditions,[2] including when a defendant has been previously convicted for a violation of the Act:

> (e) *The prescribed punishment and degree of any offense under this Article shall be subject to the following conditions*, but the punishment for an offense may be increased only by the maximum authorized under any one of the applicable conditions:
>
> . . .
>
> (3) *If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses under any law*

---

[2] Other conditions listed in subsection (e) include, *inter alia*, that the sale or delivery of the controlled substance was by an adult to a person under age sixteen or to a pregnant woman (subdivision (e)(5)), by an adult near a school or child care center (subdivision (e)(8)), or on the grounds of "a penal institution or local confinement facility" (subdivision (e)(9)). N.C.G.S. § 90-95(e) (2017).

> *of North Carolina or any law of the United States or any other state, which offenses are punishable under any provision of this Article, he shall be punished as a Class I felon.* The prior conviction used to raise the current offense to a Class I felony shall not be used to calculate the prior record level.

*Id.* § 90-95(e)(3) (2017) (emphases added). There is no dispute between the parties that, under this subdivision and in light of his plea agreement, defendant was subject to *punishment* as a Class I felon for possession of marijuana. Instead, the contested issue is the effect of subdivision (e)(3) on the *offense* for which defendant was convicted—whether the offense was a Class I felony or only a Class 1 misdemeanor with the sentence enhanced to the level of a Class I felon.

In *Jones* this Court considered an analogous question with regard to possession of a different controlled substance: "whether the North Carolina General Assembly classifie[d] the offense of possession of cocaine as a misdemeanor or a felony under N.C.G.S. § 90-95(d)(2)." 358 N.C. at 474, 598 S.E.2d at 126. The defendant had been indicted for and acknowledged the status of, *inter alia*, being an habitual felon, with one of the three underlying felonies being a 12 November 1991[3] conviction for

---

[3] As the State notes, the 1991 conviction for possession of cocaine by the defendant in *Jones* "was governed by a prior version of section 90-95(d)(2)." *Jones*, 358 N.C. at 477 n.5, 598 S.E.2d at 127 n.5 (citing N.C.G.S. § 90-95(d)(2) (Supp. 1991) (amended 1993)). However, because "the text of the statute relevant to the issue presented by [the *Jones*] appeal remain[ed] the same . . . as it appeared in November 1991," the Court "refer[red] only to the [then] current version of section 90-95(d)(2) in [its] opinion." *Id.* at 477 n.5, 598 S.E.2d at 127 n.5. Despite additional amendments to section 90-95 in the years since *Jones* was decided, the critical language of subdivision (d)(2)—providing that, generally, a person who possesses a Schedule II controlled substance is "guilty of a Class 1 misdemeanor," but that a conviction

possession of cocaine. *Id.* at 474, 598 S.E.2d at 126. "Pursuant to his plea agreement, [the] defendant preserved a right to appeal the trial court's denial of his . . . motion to dismiss his habitual felon indictment." *Id.* at 475, 598 S.E.2d at 126. On appeal, the defendant

> contended that his habitual felon indictment was insufficient because . . . the 1991 conviction for possession of cocaine[ ] was classified as a misdemeanor under N.C.G.S. § 90-95(d)(2). A panel of the Court of Appeals unanimously agreed based upon its conclusion that in 1991 N.C.G.S. § 90-95(d)(2) "plainly" classified possession of cocaine as a misdemeanor.

*Id.* at 475, 598 S.E.2d at 126 (citation omitted). Cocaine is a Schedule II controlled substance. N.C.G.S. § 90-90(1)(d) (2017). As noted above, subdivision 90-95(d)(2) states that, while generally a person in possession of a specified amount of "[a] controlled substance classified in Schedule II . . . shall be guilty of a Class 1 misdemeanor," if the controlled substance possessed is cocaine, "the violation shall be punishable as a Class I felony." *Id.* § 90-95(d)(2).

In *Jones* the defendant made a very similar argument to the one advanced by defendant in the present case:

> that under the plain language of section 90-95(d)(2), the offense of possession of cocaine is a misdemeanor. . . . [because] cocaine [is] a Schedule II controlled substance, and the first sentence of section 90-95(d)(2) . . . states that a person in possession of a "Schedule II, III, or IV" controlled substance is "guilty of a Class 1 misdemeanor." According to [the] defendant, the statute's third sentence,

_____

for possession of the Schedule II controlled substance cocaine is "punishable as a Class I felony"—has remained unchanged. *See* N.C.G.S. § 90-95(d)(2) (2017).

providing that a conviction for possession of cocaine is "punishable as a Class I felony," does not serve to classify possession of cocaine as a felony for determining habitual felon status. Rather, that phrase simply denotes the proper punishment or sentence for a conviction for possession of cocaine.

358 N.C. at 477, 598 S.E.2d at 127-28 (internal citations omitted). This Court firmly rejected that construction of the statute, holding that the more specific exceptions set forth in the third sentence of N.C.G.S. § 90-95(d)(4) controlled over the general rule set out in the first sentence, since "the phrase shall be 'punishable as a Class I felony' does not simply denote a sentencing classification, but rather, dictates that a conviction for possession of the substances listed therein, including cocaine, is elevated to a felony classification for all purposes." *Id.* at 478, 598 S.E.2d at 128. Further, the Court "acknowledge[d] that the General Assembly utilizes differing terminology to classify criminal offenses as felonies," while still rejecting the "defendant's argument that these differences indicate the General Assembly's intent to create a special felony sentencing classification for possession of cocaine." *Id.* at 484, 598 S.E.2d at 132. Pertinent to the instant appeal, the court in *Jones* also observed:

> The General Assembly routinely uses the phrases "punished as" or "punishable as" a "felony" or "felon" to classify certain crimes as felonies. *See, e.g.*, N.C.G.S. § 14-18 (2003) (providing that "[v]oluntary manslaughter shall be punishable as a Class D felony, and involuntary manslaughter shall be punishable as a Class F felony"); N.C.G.S. § 14-30 (2003) (stating that a person who commits the crime malicious maiming "shall be punished as a Class C felon"); N.C.G.S. § 14-39(b) (2003) (noting that first-

degree kidnapping "is punishable as a Class C felony" and that second-degree kidnapping "is punishable as a Class E felony"); N.C.G.S. § 14-52 (2003) (stating that "burglary in the first degree shall be punishable as a Class D felony, and burglary in the second degree shall be punishable as a Class G felony"); N.C.G.S. § 14-58 (2003) (providing that first-degree arson "is punishable as a Class D felony" and that second-degree arson "is punishable as a Class G felony"); N.C.G.S. § 14-202.1(b) (2003) (stating that "[t]aking indecent liberties with children is punishable as a Class F felony"); N.C.G.S. § 20-106 (2003) (providing that a person guilty of receiving or transferring stolen vehicles "shall be punished as a Class H felon"); N.C.G.S. § 20-138.5(a), (b) (2003) (noting, pursuant to the habitual impaired driving statute, that if a person drives while impaired and has been convicted of three or more offenses involving impaired driving as defined by N.C.G.S. § 20-4.01(24a) within the previous seven years, that person "shall be punished as a Class F felon").

*Id.* at 484-85, 598 S.E.2d at 132 (brackets in original). This Court noted that these examples and "other statutes contain a structure similar to N.C.G.S. § 90-95(d)(2), in which a crime is *classified as a misdemeanor, but elevated to a felony by the language 'punishable' or 'punished' as a 'felony' or 'felon' where special circumstances exist.*" *Id.* at 485, 598 S.E.2d at 132 (emphasis added). This Court then concluded that, under subdivision (d)(2), "the offense of possession of cocaine is classified as a felony for all purposes." *Id.* at 486, 598 S.E.2d at 133.

Here the critical language in subdivision (e)(3) is "shall be punished as a Class I felon." N.C.G.S. § 90-95(e)(3). As we held in *Jones*, the effect of such phrases is to elevate an offense that would otherwise be a misdemeanor to a felony when the specified conditions are met. We further note that the General Assembly's intent is

even clearer in this case in light of the explicit wording of the applicable subsection. Subsection (e), by its plain language, addresses how specific conditions, like a misdemeanant's prior convictions under the Act, affect two determinations: "[t]he prescribed punishment *and degree of any offense* under this Article . . . ." *Id.* § 90-95(e) (emphasis added). The emphasized phrase denotes that the subsequent provisions of the statute affect not only the designated punishment but also the degree of the offenses discussed when the listed conditions are present. Likewise, the final sentence of subdivision (e)(3) states that "[t]he prior conviction used *to raise the current offense to a Class I felony* shall not be used to calculate the prior record level," indicating that the General Assembly intended the effect of the conditions listed in the subdivision to not simply enhance the punishment of a misdemeanor as defendant contends but rather "to raise the current offense to a Class I felony." *See id.* § 90-95(e)(3) (emphasis added).

In conclusion, we hold that, under the reasoning of *Jones* and in light of the plain language of N.C.G.S. § 90-95(e)(3), possession of more than one-half but less than one and one-half ounces of marijuana in violation of N.C.G.S. § 90-95(d)(4) by a defendant with a prior conviction for an offense punishable under the Act "is classified as a [Class I] felony for all purposes." *Jones*, 358 N.C. at 486, 598 S.E.2d at 133. Accordingly, the Court of Appeals erred in determining that "the substantive offense remain[ed] a Class 1 misdemeanor" and that, as a consequence, defendant's "habitual felon [status could not] be used to further enhance a sentence that [wa]s not itself a

substantive offense." *Howell*, ___ N.C. App. at ___, 792 S.E.2d at 901. The trial court here properly elevated defendant's possession of marijuana offense to a Class I felony on the basis of his prior conviction under the Act, and then correctly punished that substantive Class I felony as a Class E felony on the basis of defendant's habitual felon status.

Accordingly, we reverse the decision of the Court of Appeals on this issue and instruct that court to reinstate the trial court's judgment.

REVERSED.

Justice BEASLEY dissenting.

In this case the conduct for which defendant was sentenced was his possession of between one-half ounce and one and one-half ounces of marijuana. The majority's statutory interpretation affirms a sentence that first elevates a Class 1 misdemeanor to a Class I felony due to defendant's past conduct and second, based on this "felony," further enhances defendant's sentence to a Class E felony *also* due to defendant's past conduct. I dissent from the majority opinion because I do not believe this Court's opinion in *State v. Jones* controls the interpretation of this statutory provision, and furthermore, under the majority's interpretation of how these provisions work together, the sentence is not proportional to the crime and is excessive in light of defendant's charged conduct.

First, *Jones* is distinguishable from this case because in *Jones*, the Court interpreted an entirely different provision in N.C.G.S. § 90-95. *See generally State v. Jones*, 358 N.C. 473, 598 S.E.2d 125 (2004) (interpreting N.C.G.S. § 90-95(d)(2) to conclude that the possession of cocaine is classified as a Class I felony rather than enhanced from a Class 1 misdemeanor to a Class I felony). The Court's interpretation in *Jones* of N.C.G.S. § 90-95(d)(2) should not control how we interpret N.C.G.S. § 90-95(e)(3). In *Jones* the provision at issue stated, "*If the controlled substance is . . . cocaine . . . the violation shall be punishable as a Class I felony.*" 358 N.C. at 476-77, 598 S.E.2d at 127 (quoting N.C.G.S. § 90-95(d)(2) (2003) (emphasis added)). The language and structure of subdivision 90-95(d)(2) as analyzed in *Jones* are analogous to subdivision 90-95(d)(4)[1] and, in this case, support the majority's interpretation of subdivision 90-95(d)(4) to elevate defendant's Class 3 misdemeanor to a Class 1 misdemeanor just as *Jones* elevated the defendant's Class 1 misdemeanor to a Class I felony.

But the majority's next analytical step—the elevation of the substantive offense from a Class 1 misdemeanor to a Class I felony under subdivision 90-95(e)(3)[2]—is not controlled by *Jones*. Despite this Court's dicta that the General

---

[1] This provision states, in relevant part, that "[i]f the quantity of the controlled substance exceeds one-half of an ounce (avoirdupois) of marijuana . . . , the violation shall be punishable as a Class 1 misdemeanor." N.C.G.S. § 90-95(d)(4) (2017).

[2] This section provides that "[t]he prescribed punishment and degree of any offense under this Article shall be subject to the following conditions, but the punishment for an offense may be increased only by the maximum authorized under any one of the applicable conditions:"

Assembly "routinely uses the phrases 'punished as' or 'punishable as' a 'felony' or 'felon' to classify certain crimes as felonies," *Jones*, 358 N.C. at 484-85, 598 S.E.2d at 132 (citations omitted), a statutory provision using the language "punished as" was not at issue in *Jones*. The General Assembly used different language in subdivision 90-95(e)(3) than it used in subdivisions 90-95(d)(2) and 90-95(d)(4). The language at issue in this case reads: "If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses . . . punishable under . . . this Article, *he shall be punished as* a Class I felon," N.C.G.S. § 90-95(e)(3) (2017) (emphasis added), while the language at issue in *Jones* was "[i]f the controlled substance is . . . cocaine . . . *the violation shall be punishable as* a Class I felony," *Jones*, 358 N.C. at 476-77, 598 S.E.2d at 127 (emphasis modified from original) (quoting N.C.G.S § 90-95(d)(2) (2003)). The subject of the phrase at issue in *Jones* indicates the focus of the provision is on the violation itself, namely, possession of cocaine, thus supporting a conclusion that the provision constitutes an escalation of the classification of the offense, namely, "any person" previously convicted of a drug-

---

. . .

(3)  If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses under any law of North Carolina or any law of the United States or any other state, which offenses are punishable under any provision of this Article, he shall be punished as a Class I felon. The prior conviction used to raise the current offense to a Class I felony shall not be used to calculate the prior record level.

N.C.G.S. § 90-95(e)(3) (2017).

related violation, *see* N.C.G.S. § 90-95(d)(2) (2017); however, the subject of the language at issue here indicates the focus is on *the defendant*, which supports an analysis that the provision constitutes a sentence enhancement, *see id.* § 90-95(e)(3). Thus, our determination of legislative intent in *Jones* relating to a different provision containing different language is not controlling in this case.[3]

Because *Jones* does not control, I believe the interpretation of N.C.G.S. § 90-95(e)(3) is a matter of first impression. The plain language of subdivision 90-95(e)(3)—that "[defendant] shall be punished as a Class I felon"— is subject to two

---

[3] Additionally, in *Jones*, the Court was able to defer to the way in which the crime of cocaine possession has been treated historically; that is, the Court was persuaded that the legislature intended to treat cocaine possession as a felony because possession of cocaine had always been a felony rather than a misdemeanor under the North Carolina Controlled Substances Act, regardless of the quantity of cocaine. *See Jones*, 358 N.C. at 479-84, 598 S.E.2d at 129-32. Due to the fact that this Court in *Jones* spent multiple pages discussing the twenty-five years of legislative deference to our treatment of that crime, I believe this Court was heavily persuaded by the legislative history of the way *cocaine possession* has been treated by the General Assembly. *See id.* at 479-84, 598 S.E.2d at 129-32. The offense of marijuana possession carries a markedly different legislative history that supports a different interpretative result than the one reached in *Jones*. Since the General Assembly enacted the Controlled Substances Act in 1971, marijuana possession offenses have always been classified based on the *quantity* of marijuana possessed, *see, e.g., State v. Mitchell*, 336 N.C. 22, 27, 442 S.E.2d 24, 26 (1994), rather than the defendant's past conduct. Here defendant's conviction was for possession of between one-half and one and one-half ounces of marijuana, a crime that has been considered a misdemeanor since 1985. *See* Act of July 19, 1971, ch. 919, 1971 N.C. Sess. Laws 1477 (enacting the North Carolina Controlled Substances Act, classifying marijuana as a Schedule VI substance, and classifying the first and second offense of possession of marijuana as a misdemeanor regardless of quantity); Act of May 22, 1973, ch. 654, sec. 1, 1973 N.C. Sess. Laws. 967, 968 (changing classification of the offense of marijuana possession to a felony when the defendant possesses more than an ounce); Act of July 10, 1985, ch. 675, sec. 1, 1985 N.C. Sess. Laws 873, 873-84 (classifying marijuana possession as "a general misdemeanor" unless the quantity *exceeds* one and one-half ounces); *see also* N.C.G.S. § 90-95(d)(4) (classifying the offense of marijuana possession as a Class 1 misdemeanor if the quantity does not exceed one and one-half ounces).

competing interpretations: (1) the provision serves as a sentencing enhancement, meaning defendant should receive the sentence associated with a Class I felony; or (2) the provision elevates the substantive conviction from a misdemeanor to a felony. *See* N.C.G.S. § 90-95(e)(3). Reasonable minds could differ regarding the meaning of this provision, based on its plain language. The ambiguity is not helped by the fact that the final sentence in subdivision (e)(3) states that "[t]he prior conviction [is] *used to raise the current offense to a Class I felony*." *Id.* The former interpretation is the argument defendant makes in this case and the view taken by the Court of Appeals, *see State v. Howell*, ___ N.C. App. ___, ____, 792 S.E.2d 898, 901 (2016) (only analyzing the plain language to support the conclusion that the provision is a sentencing enhancement), while the latter is the interpretation of the State and the majority of this Court.

When the provision at issue is read along with other provisions within section 90-95, it is apparent that the General Assembly used three separate phrases to reflect how defendants should be punished—"the violation shall be punishable as"; "[defendant] shall be punished as"; and "[defendant] shall be guilty of." *See* N.C.G.S. § 90-95 (2017). The General Assembly used varying language within subdivision (e)(3) itself and across its eight provisions, indicating there should be some difference in how subdivisions (e)(3), (e)(5), (e)(8), and (e)(10) should operate versus subdivisions (e)(4), (e)(7) and (e)(9). *See id.* § 90-95(e). Because "different words used in the same statute should be assigned different meanings," *In re M.I.W.*, 365 N.C. 374, 379, 722

S.E.2d, 469, 473 (2012) (quoting *Ferrell v. Express Check Advance of SC LLC*, 591 F.3d 698, 704 (4th Cir. 2010)), I conclude that the General Assembly chose these specific phrases for different operational purposes, though it is unclear exactly what was intended. Because the interpretation of these phrases has implications affecting other statutes, such as the habitual felon statute in this case, we should not assume they can be used interchangeably. *See, e.g.*, N.C.G.S. §§ 14-7.1 to -7.76 (2017). Since it is not clear what the General Assembly meant by using these various phrases, and the dueling interpretations create widely differing results—specifically, this defendant's potential maximum punishment of twenty-four versus eighty-eight months of active jail time—the rule of lenity should apply.

"The rule of lenity requires interpreters to resolve ambiguity in criminal laws in favor of defendants. Deferring to the prosecuting branch's expansive views of these statutes 'would turn [their] normal construction . . . upside-down, replacing the doctrine of lenity with a doctrine of severity." *Whitman v. United States*, 135 S. Ct. 352, 353, 190 L. Ed. 2d 381, 382 (2014) (mem.) (statement of Scalia, J.) (alterations in original) (quoting *Crandon v. United States*, 494 U.S. 152, 178, 108 L. Ed. 2d 132, 152 (1990) (Scalia, J., concurring in the judgment)) *denying cert. to United States v. Whitman*, 555 F. App'x 98 (2d Cir. 2004); *accord State v. Hinton*, 361 N.C. 207, 211, 639 S.E.2d 437, 440 (2007) ("In construing ambiguous criminal statutes, we apply the rule of lenity, which requires us to strictly construe the statute."). The General Assembly's choice to separate sub-section 90-95(e) from sub-section 90-95(d) in the

statutory structure indicates the legislature intended these two provisions to operate differently. In contrast to the language in subdivision 90-95(d)(4), subdivision 90-95(e)(3) focuses on a defendant's past conduct—specifically, the defendant's previous convictions. Construing the statute according to the rule of lenity, I read subdivision 95-90(e)(3) to have no effect on the substantive classification of the violation (as subdivision 90-95(d)(4) does). Rather, its sole effect is to enhance a defendant's sentence.

Moreover, under the majority's interpretation of the provision, subdivision 90-95(e)(3) is duplicative of the habitual felon statute when applied to defendant's case. *Compare* N.C.G.S. § 14-7.6 (providing that habitual felons[4] are "sentenced at a felony class level that is four classes higher than the principal felony for which the person was convicted") *with id.* § 90-95(e)(3) ("If any person commits a Class 1 misdemeanor under this Article and if he has previously been convicted for one or more offenses under any law of North Carolina or any law of the United States or any other state, which offenses are punishable under any provision of this Article, he shall be punished as a Class I felon."). Both statutes target recidivists, raising the level at which a defendant is sentenced based on the defendant's past conduct, and reflect the intent of the legislature "to segregate that person from the rest of society for an extended period of time" when the individual displays a propensity for recidivism.

---

[4] An "habitual felon," under the statute, is "[a]ny person who has been convicted of or pled guilty to three felony offenses in any federal court or state court in the United States or combination thereof." N.C.G.S. § 14-7.1(a).

*State v. Kirkpatrick*, 345 N.C. 451, 454, 480 S.E.2d 400, 402 (1997) (quoting *Rummel v. Estelle*, 445 U.S. 263, 284, 63 L.Ed.2d 382, 397 (1980)).

Here, however, because the majority's reasoning allows both the N.C.G.S. § 90-95(e)(3) and the habitual felon recidivist provisions to apply, defendant is punished doubly for his past conduct—specifically, his 27 August 2003 conviction for felonious possession with intent to sell or deliver marijuana—in the instant case. Also, though not at issue in this case, one could anticipate a situation in which the majority's reasoning is applied to a defendant not yet qualified as an habitual felon, to convert that defendant into an habitual felon by treating a misdemeanor drug offense as a third and qualifying felony under subdivision 90-95(e)(3). Therefore, in considering the statutory framework as a whole, subdivision 90-95(e)(3) may have been intended to increase the punishment for those recidivist defendants who have committed multiple drug offenses, with the effect of assigning a defendant the same punishment as that imposed on a felon but not elevating his substantive conviction to a felony.

Finally, what is troubling about the majority's interpretation of how these various sentencing provisions work together is that this interpretation creates a penalty that is disproportionate in light of defendant's actual conduct reflected in this offense. The "deeply rooted" proportionality principle of sentencing, *Solem v. Helm*, 463 U.S. 277, 284-86, 77 L. Ed. 2d 637, 645-57 (1983) (explaining the history behind the principle), dictates that "the punishment should fit the crime," *Ewing v. California*, 538 U.S. 11, 31, 155 L. Ed. 2d 108, 124 (2003) (Scalia, J. concurring in the

judgment) (defining the principle before disagreeing with the majority that the Framers included a proportionality principle within the Eighth Amendment that applies to noncapital cases).[5] "[T]he punishment ought to reflect the degree of moral culpability associated with the offense for which it is imposed. Trivial offenses should attract only minor punishment and the most despicable offenses should be punished severely, with punishment appropriately graduated for offenses that fall between these extremes." Ian P. Farrell, *Gilbert & Sullivan & Scalia: Philosophy, Proportionality, & The Eighth Amendment*, 55 Vill. L. Rev. 321, 337 (2010). Logically, because defendant's past conduct does not change the nature of the current crime for which he is being punished, his past criminal history should operate as a sentencing enhancement under subdivision 90-95(e)(3) rather than to reclassify a misdemeanor offense as a felony offense.

---

[5] The U.S. Supreme Court has held that the principle of proportionality is contained within the Eighth Amendment's proscription of cruel and unusual punishments, and thus, the Federal Constitution prohibits sentences that are disproportionate to the crime committed. *Helm*, 463 U.S. at 284, 77 L. Ed. 2d at 645; *see generally Ewing,* 538 U.S. 11, 155 L. Ed. 2d 108 (despite the lack of a majority opinion, seven members of the Court agreed that a sentence is cruel and unusual within the meaning of the Eighth Amendment if the court finds it to be grossly disproportionate to the crime). Notably, in *Ewing*, *Helm,* and *Rummel* (cases all considering recidivists' sentences under the Eighth Amendment), the underlying crimes triggering the recidivist statute were substantively felonies. *Ewing,* 538 U.S. at 18-19, 155 L. Ed. 2d at 115-16; *Helm*, 463 U.S. at 279-81, 77 L. Ed. 2d at 642-44; *Rummel*, 445 U.S. at 265-66, 63 L. Ed. 2d at 385-86. There may be an even more persuasive Eighth Amendment argument when a crime typically classified and punished as a misdemeanor is escalated to a felony, triggering the recidivist statute and resulting in a disproportionate sentence. *See Helm,* 463 U.S. at 290-92, 77 L. Ed. 2d at 649-50 (applying a three-factor test to strike down a sentence as significantly disproportionate after considering (1) the gravity of the offense versus the harshness of the penalty, (2) the sentences imposed on other criminals in the same jurisdiction, and (3) the sentences imposed for the commission of the same crime in other jurisdictions).

In this case the Court of Appeals majority was correct to conclude defendant's Class 1 misdemeanor should have been punished as a Class I felony, but the substantive offense should remain a Class 1 misdemeanor, and therefore, defendant's habitual felon status has no effect on his sentence. *Howell*, ___ N.C. App. at ___, 792 S.E.2d at 901. Because the quantity of the marijuana, and not defendant's past conduct, is what controls the classification of the substantive offense under this statutory framework, and because this punishment does not "fit [defendant's] crime," I respectfully dissent.